UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BONCHON FRANCHISE LLC,

                              Plaintiff,

    -against-

GABRIELA M. COLEMAN and GCCHICK1, LLC,

                              Defendants.

COMPLAINT

Docket No. _____

        Plaintiff Bonchon Franchise LLC, by its attorneys, Kaufmann Gildin & Robbins LLP, as

and for its Complaint against Defendants Gabriela M. Coleman and GCCHICK1, LLC

respectfully alleges as follows:

        1.      This is a civil action seeking monetary damages for breach of contract arising

from a terminated franchise relationship.

        2.      Despite their contractual obligation to operate their franchised BONCHON

restaurant for a minimum initial term of ten years, Defendants unilaterally and without

Bonchon's consent ceased operating their franchised BONCHON restaurant on or about April

28, 2026.  Pursuant to the plain terms of the parties' franchise agreement and related agreements,

defendants are liable to plaintiff for unpaid past due royalties and fees, lost profits for the balance

of the initial term, and attorneys' fees.

## THE PARTIES

        3.      Plaintiff Bonchon Franchise LLC ("Bonchon") is a limited liability company

organized and existing under the laws of the State of New York, with its principal place of

business in Dallas, Texas.  Bonchon U.S.A., Inc., a corporation duly organized and existing

under the laws of the State of New York with its principal place of business in Dallas, Texas, is

the sole member of Plaintiff Bonchon Franchise LLC.

4.      Upon information and belief, Defendant Gabriela M. Coleman ("Coleman") is an individual who resides at 1457 Whispering Maples Drive South, Ann Arbor, Michigan 48108.

5.      Upon information and belief, Defendant GCCHICK1, LLC ("GCCHICK") is a limited liability company organized and existing under the laws of the State of Michigan, with its principal place of business at 1457 Whispering Maples Drive South, Ann Arbor, Michigan 48108.

6.      Upon information and belief, Coleman is the managing member, sole member and owner of GCCHIICK.

## JURISDICTION

7.      This Court has original subject matter jurisdiction under 28 U.S.C. § 1332, in that the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.      Venue is appropriate in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district and the Defendants are subject to the Court's personal jurisdiction with respect to this action in this district.

9.      Venue is also appropriate in this district because Bonchon and Defendants have agreed, in writing, to litigate the claims asserted in this Complaint in a court of competent jurisdiction in New York, New York.

10.      This Court has personal jurisdiction over the Defendants pursuant to CPLR § 302.

11.      The Court also has personal jurisdiction over Defendants because they agreed, in writing, to submit to the jurisdiction of a court of competent jurisdiction in New York, New York in connection with any disputes between them and Bonchon.

2

Doc Num 1006456-V1

## BONCHON'S SYSTEM AND MARKS

12.      Founded by 2002 in South Korea by Jinduk Seo, Bonchon is a fast-casual dining restaurant known for Korean double-fried chicken, Asian fusion cuisine, and Korean specialties. Bonchon's signature fried chicken is hand-breaded, double-fried and served with proprietary sauces made in Busan, South Korea. Sauce is hand-brushed on every piece of chicken and made to order. Since 2006, when the first Bonchon location in the United States opened in Fort Lee, New Jersey, Bonchon has grown to over 150 locations throughout 27 states in the United States, with 498 locations worldwide.

13.      Bonchon offers franchises for businesses (each a "Bonchon Business" or "Business") that operate fast-casual service restaurants (each a "Restaurant"), specializing in the sale of Korean style fried chicken, complementary appetizers, side dishes, beverages and related menu items.

14.      The franchised Restaurants are established and operated under a comprehensive and unique system created and owned by Bonchon (the "System"), which includes distinctive signage, interior and exterior design, décor and color schemes; special recipes and menu items, including proprietary products and ingredients; uniform standards, specifications, and procedures for operation; quality and uniformity of products and services offered; inventory, management and financial control procedures; training and assistance; and advertising.

15.      Bonchon offers the right to establish and operate a single franchised "BONCHON" Restaurant under the terms of a Bonchon Franchise LLC Franchise Agreement.

16.      Through the expenditure of time, skill, effort and money, Bonchon and its affiliates have developed and are the sole and the exclusive owners of a number of trademarks, service marks and trade names (the "Trademarks") which have been used in the development,

3

organization and operation of a system of fast-casual service restaurants (each a "Restaurant"), specializing in the sale of Korean style fried chicken, complementary appetizers, side dishes, beverages and related menu items.

17.    Bonchon and its predecessors have entered into Franchise Agreements for the operation of BONCHON restaurants at various locations throughout the United States and the world, pursuant to which Bonchon and its predecessors license others to operate BONCHON restaurants using Bonchon's Trademarks and System.

18.    Bonchon's System consists of the manner in which the Franchisee is licensed to operate the BONCHON Restaurant, the method of doing business, and certain other trade secrets and proprietary information, as designated and adopted by Bonchon and its predecessors.

19.    Bonchon and its predecessors have developed the Trademarks, for use in the operation of the licensed BONCHON restaurants, which include the following principal trademarks, which, among several others, have been registered by Bonchon or its affiliates on the Principal Register of the United States Patent and Trademark Office:

| Mark | Registration Number | Description Of Mark | Principal Or Supplemental Register | Registration Date |
|------|--------------------|--------------------|----------------------------------|-------------------|
| | 6343494 | BONCHON CHICKEN (word and design) | Principal | 05-04-21 |
| BONCHON | 4110949 | BONCHON (words only) | Principal | 03/13/12 |
| | 6176828 | BONCHON (word and design) | Principal | 10/13/20 |
| | 5596065 | BONCHON | Principal | 10/30/18 |

4

| Mark | Registration Number | Description Of Mark | Principal Or Supplemental Register | Registration Date |
|---|---|---|---|---|
| | 6295809 | BONCHON | Principal | 03/16/21 |
| | 6322772 | BONCHON HANDCRAFTED TASTE & FLAVOR KOREAN FRIED CHICKEN & ASIAN FUSION EST. 2002 | Principal | 04/13/21 |
| | 6348858 | BONCHON KOREAN FRIED CHICKEN | Principal | 05/11/21 |
| | 7038230 | BONCHON KOREAN FRIED CHICKEN | Principal | 04/25/23 |
| CRUNCH OUT LOUD | 1710031 | CRUNCH OUT LOUD | Principal | 09/19/23 |
| CRUNCH OUT LOUD | 7055957 | CRUNCH OUT LOUD | Principal | 05/16/23 |

## THE PARTIES' FRANCHISE AGREEMENT AND RELATED AGREEMENTS

20.     On November 21, 2023, Bonchon and Coleman entered into a Bonchon Franchise LLC Franchise Agreement (as amended in writing as described below, the "Franchise Agreement"), pursuant to which Coleman was granted a license, and Coleman undertook the obligation, to operate a "BONCHON" restaurant at an approved location for ten (10) years and to use Bonchon's proprietary marks and System in connection therewith.

21.     On November 21, 2023, Bonchon and Coleman entered into a Bonchon

5

Confidentiality/Non-Competition Agreement ("Non-Competition Agreement") in connection with the parties' Franchise Agreement.

22.    On November 21, 2023, Coleman executed a Guarantee of Bonchon Franchise Agreement ("Guarantee") in connection with the parties' Franchise Agreement.

23.    On April 19, 2024, Bonchon, Coleman and GCCHICK executed an Assignment and Assumption of Franchise Agreement, pursuant to which Bonchon consented to the assignment of Coleman's rights, interests and obligations under the Franchise Agreement to Coleman's entity, GCCHICK, under the terms and conditions set forth therein.

24.    On April 19, 2024, Bonchon and GCCHICK executed an Amendment to Bonchon Franchise LLC Franchise Agreement to reflect the exact address of the BONCHON Restaurant, Restaurant Concept and assign a Protected Territory.

25.    On November 18, 2025, Bonchon and GCCHICK executed a Royalty Abatement Agreement, pursuant to which Bonchon agreed to temporarily reduce the Continuing Royalty payable to Bonchon under Section 5.02 of the Franchise Agreement under the terms and conditions set forth therein.

26.    Pursuant to the Franchise Agreement, Defendants operated a franchised BONCHON restaurant at 2272 South Main Street, Ann Arbor, Michigan 48103 (the "Restaurant") from on or about January 12, 2025 to on or about April 28, 2026, on which date Defendants permanently closed and ceased operating the Restaurant without consent from Bonchon.

## DEFENDANTS' CONTRACTUAL OBLIGATIONS
## UNDER THE AGREEMENTS

**The Franchise Agreement**

27.    Under Sections 2.01 and 4.01 of the Franchise Agreement, Bonchon granted

6

Doc Num 1006456-V1

Defendants a license to use Bonchon's trademarks, service marks and System in connection with the operation of a BONCHON Restaurant for an initial term of ten (10) years and Defendants agreed to operate the BONCHON Restaurant for the full initial term.

28.     Pursuant to Section 18.01 of the Franchise Agreement, upon expiration or termination of the Franchise Agreement, Defendants agreed to pay Bonchon all past due royalties and other sums due to Bonchon; to pay Bonchon its damages, including lost profits, incurred as a result of the termination of the Franchise Agreement; to discontinue his use of the BONCHON name and trademarks; to "de-identify" the Restaurant; and, to otherwise comply with the post-termination provisions therein.

29.     Pursuant to Section 18 of the Franchise Agreement, upon expiration or termination of the Franchise Agreement, all rights granted thereunder immediately terminated, and Defendants were obligated to immediately and permanently terminate the use, in any manner whatsoever, of any confidential methods, procedures and/or techniques associated with the System.

30.     Pursuant to Section 12.01 of the Franchise Agreement, Defendants agreed that they were only licensed to use Bonchon's Confidential Information, as defined therein, in connection with the operation of their franchised BONCHON Restaurant and that they would immediately cease use of, and return to Bonchon, any such Confidential Information upon termination of the Franchise Agreement.

31.     Pursuant to Sections 18.01(5) and  31.01 of the Franchise Agreement, the prevailing party in any litigation between the parties shall be reimbursed by the losing party for all costs incurred in connection with such litigation, including reasonable attorneys' and experts' fees.

Doc Num 1006456-V1

**The Non-Competition Agreement**

32.      Pursuant to the Non-Competition Agreement, Coleman agreed that that Defendants were only licensed to use Bonchon's Confidential Information, as defined therein, in connection with the operation of his franchised BONCHON Restaurant and that they would immediately cease use of, and return to Bonchon, any such Confidential Information upon termination of the Franchise Agreement.

33.      Pursuant to the Non-Competition Agreement, Coleman agreed "to pay all costs and expenses (including reasonable attorneys' and experts' fees) incurred by [Bonchon] in connection with the enforcement of those covenants not to compete set forth in this Agreement."

**The Guarantee**

34.      Pursuant to the Guarantee, Coleman agreed to be "personally bound by each and every covenant, term, condition, agreement and undertaking contained and set forth in said Franchise Agreement and any other agreement(s) by and between [Defendants and Bonchon]."

## BONCHON'S DEMAND FOR COMPLIANCE WITH POST-TERMINATION OBLIGATIONS

35.      On or about April 28, 2026, Defendants permanently closed and ceased operating their BONCHON Restaurant, without consent from Bonchon.

36.      By letter dated May 14, 2026 ("Notice of Termination"), Bonchon notified Defendants that their closure and abandonment of the Restaurant constituted a material default under the Franchise Agreement and, as a result, that Bonchon had terminated the Franchise Agreement, effective immediately.

37.      The Notice of Termination further demanded that Defendants comply with their post-termination obligations under the Franchise Agreement, including, without limitation,

Doc Num 1006456-V1

payment of all past due royalties and fees in the amount of $787.26; payment of Lost Profit damages in the amount of $342,841.94; and discontinuance of use of Bonchon's Proprietary Marks and Confidential Information.

38.     Defendants have not tendered any payments to Bonchon and have not, upon information and belief, otherwise complied with their post-termination obligations under the Franchise Agreement.

## COUNT I

**(Breach of Contract Against All Defendants:
Failure to Make Payment Under Section
18.01(1) & 18.01(5) of Franchise Agreement)**

39.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1-38 above, with the same force and effect as if fully set forth herein.

40.     The Franchise Agreement is a valid and binding agreement.

41.     Bonchon has complied with all of its obligations under the Franchise Agreement.

42.     Defendants' failure to pay Bonchon their past due royalties and fees and Lost Profit damages constitutes a material breach of the Franchise Agreement.

43.     By virtue of Defendants' foregoing breaches of the Franchise Agreement and related agreements, Bonchon  has been damaged and is entitled to recover from Defendants damages in amount to be determined at trial but believed to be $342,841.94, plus statutory interest thereon.

44.     Bonchon is also entitled under the Franchise Agreement and related agreements to recover from Defendants its costs, expenses and reasonable attorney's fees incurred by virtue of Defendants' foregoing breaches of contract.

Doc Num 1006456-V1

## COUNT II

### (Breach of Contract Against All Defendants: Breach of Non-Competition and Confidentiality Obligations)

45.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1-44 above, with the same force and effect as if fully set forth herein.

46.     The Franchise Agreement is a valid and binding agreement.

47.     Bonchon has complied with all of its obligations under the Franchise Agreement.

48.     Upon information and belief, Defendants have used and/or disclosed Bonchon's Confidential Information after the termination of the Franchise Agreement.

49.     Defendants have failed to return Bonchon's Confidential Information after termination of the Franchise Agreement.

50.     As a result of the foregoing, Defendants have breached and shall continue to breach their obligations under the Franchise Agreement and related agreements.

51.     By virtue of Defendants' foregoing breaches of the Franchise Agreement and related agreements, Bonchon has been damaged and is entitled to recover from Defendants damages in amount to be determined at trial, plus statutory interest thereon.

52.     Bonchon is also entitled under the Franchise Agreement and related agreements to recover from Defendants its costs, expenses and reasonable attorney's fees incurred by virtue of Defendants' foregoing breaches of contract.

## COUNT III

### (Breach of Contract Against Coleman: Breach of Guarantee)

53.     Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1-52 above, with the same force and effect as if fully set forth herein.

54.     The Guarantee is a valid and binding agreement.

Doc Num 1006456-V1

55.      Bonchon has complied with all of its obligations under the Guarantee.

56.      Coleman executed the Guarantee of Bonchon Franchise Agreement, pursuant to which she individually absolutely and unconditionally guaranteed the payment of all amounts and the performance of all the covenants, terms, conditions, agreements, and undertakings contained and set forth in the Franchise Agreement.

57.      Coleman has materially breached the Guarantee by failing to comply with the post-termination obligations under the Franchise Agreement, as detailed above.

58.      By virtue of Coleman's foregoing breaches of the Guarantee, Bonchon has been damaged and is entitled to recover from Coleman damages in amount to be determined at trial, but believed to be $342,841.94, plus statutory interest thereon.

59.      Bonchon is also entitled under the Guarantee to recover from Coleman its costs, expenses and reasonable attorney's fees incurred by virtue of Coleman's foregoing breaches of contract.

**WHEREFORE**, Bonchon requests judgment in its favor against Defendants as follows:

1.      A monetary award against Defendants, jointly and severally, in an amount to be proven at trial, including, but not limited to, compensatory damages, expectancy damages lost profits, believed to be at least $342,841.94;

2.      A monetary award against Defendants, jointly and severally, for Bonchon's attorneys' fees and costs, in an amount to be proven at trial;

3.      For pre- and post-judgment interest; and

4.      For such other relief as the Court deems just and appropriate.

Dated: New York, New York
        June 1, 2026

Doc Num 1006456-V1

Respectfully submitted,

___s/Kevin M. Shelley_____

David J. Kaufmann
Kevin M. Shelley
Clifford J. Bond
Kaufmann Gildin & Robbins LLP
675 Third Avenue, Suite 2200
New York, New York  10017
Tel. (212) 755-3100
Fax. (212) 755-3174
dkaufmann@kaufmanngildin.com
kshelley@kaufmanngildin.com
cbond@kaufmanngildin.com
*Attorneys for Plaintiff*
*Bonchon Franchise LLC*

12